IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| AARON MALONE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:13-cv-1212 |
| | ) | |
| CORRECTIONAL CORPORATION OF AMERICA, | ) | Judge Trauger |
| Nurse BROWN, Nurse GLENDA, | ) | |
| Physician DOCTOR JANE DOE, | ) | |
| Medical Director PRESLEY, WARDEN ADAM, | ) | |
| WARDEN FORD, and WARDEN LINDAMOOD, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

The complaint in this case is before the court for an initial review pursuant to 42 U.S.C. § 1997e(c)(1). Also pending is the motion for partial judgment on the pleadings (ECF No. 9) filed by defendants Corrections Corporation of America ("CCA"), Warden Lindamood and Warden Adams (collectively, the "removing defendants").

I.    **Procedural Background**

This case comes before the court in an unusual procedural posture. Plaintiff Aaron Malone, a state prisoner presently incarcerated at the Northeast Correctional Complex in Mountain City, Tennessee, initiated this action by filing a complaint in the Circuit Court for Davidson County, Tennessee. After the complaint was served on defendants CCA (incorrectly named in the complaint as "Correctional Corporation of America"), Warden Adams (incorrectly named in the complaint as Warden Adam), and Warden Lindamood, these defendants removed the action to the United States District Court for the Western District of Tennessee. At the time the Notice of Removal was filed in June 2013, the remaining defendants, Nurse Brown, Nurse Glenda, Physician Doctor Jane Doe, Medical Director Presley, and Warden Ford, had not been served (*see* ECF No. 1 ¶ 5)[1] and therefore were not required to consent to removal. 28 U.S.C. § 1445(b)(2)(A). The removing defendants filed their answer to the complaint on August 14, 2013.

_____
[1] It appears these defendants have to date not been served.

Most of the defendants appear to be residents of the Western District of Tennessee and the events of which the plaintiffs complain occurred at the Whiteville Correctional Facility, in Hardeman County, which is located in the area embraced by the Western District of Tennessee. However, because the action was removed from the Circuit Court of Davidson County in Nashville, Tennessee, removal to the Western District was improper under 28 U.S.C. § 1441(a), which provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending." For that reason, on November 4, 2013, this action was transferred from the Western District to the Middle District of Tennessee. (ECF No. 7.)

## II.     Initial Review Under the Prison Litigation Reform Act

Regardless of its status as a removed case, for which the defendants paid the removal fee, the action, which challenges the prisoner-plaintiff's conditions of confinement, is subject to an initial review under the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-71, as amended, 42 U.S.C. § 1997e *et seq.*, which provides in relevant part:

> The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

42 U.S.C. § 1997e(c)(1). *See Jones v. Bock*, 549 U.S. 199, 202 (2007) ("The [PLRA], 42 U.S.C. § 1997e *et seq.* . . . mandates early judicial screening of prisoner complaints. . . .").

The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under [the PLRA] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

In reviewing the complaint to determine whether it states a plausible claim, "a district court must

(1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). Although *pro se* pleadings are held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with *pro se* complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

### III.    Factual Allegations

Plaintiff Aaron Malone alleges that at all relevant times he was incarcerated at the Whiteville Correctional Facility ("WCFA") and that all the defendants are or were employed by or were in a vendor relationship with CCA at WCFA.

The plaintiff states that on the evening of March 5, 2012, he was walking back to his housing pod when he slipped and fell on a puddle of fluid on the waxed concrete floor of the prison hallway. Various inmates and corrections officers witnessed the fall, but none of the officers offered assistance to the plaintiff. The plaintiff made his way to the medical clinic but was refused treatment at that time. He was called back to the clinic the next morning. Nurse Brown refused to examine him because the plaintiff had filed a grievance against her in the past, but Nurse Glenda saw him and erroneously diagnosed him as having muscle spasms. She gave him ibuprofen but refused his request for a wheelchair, walker, or cane. He submitted a grievance about the situation, which was denied.

The plaintiff remained in so much pain the remainder of the month that he could walk only with great difficulty, with other inmates' help or leaning on the wall. The plaintiff claims various officers and employees of the prison, including a number of officers who are not named as defendants as well as Warden Adams, Warden Ford, and Warden Lindamood "all knew about Mr. Malone's condition by seeing with their own eyes on a weekly bas[i]s plaintiff's condition. They saw how Mr. Malone had to embrace the walls of W.C.F.A. and needed the assistance of other inmates as a crutch to get around." (ECF No. 1-2, at 7.)

On March 12, 2012, he went back to the clinic and was given a muscle relaxer by Nurse Glenda as well as an an x-ray. The plaintiff never received the results of the x-ray. The plaintiff again asked Nurse

Glenda for a wheelchair, cane, or walker. Nurse Glenda replied that she would put him in a confined room in medical. The plaintiff did not think this was an appropriate response.

The plaintiff talked to Warden Adams on March 12 and at some point had talked to Director Presley, telling them he had not been seen by a doctor and asking for assistance in getting a wheelchair or other device to help him get around better. Adams and Presley both told him the medical decision was not up to them. For more than a month after his fall, the plaintiff was unable to walk without assistance.

The plaintiff alleges that Unit Manager Reese and his assistant Ms. Jones told the plaintiff he was having muscle spasms and they were to keep "a close eye on him." (ECF No. 1-2, at 9.) The plaintiff complains that Reese and Jones should not have had access to the plaintiff's x-ray or medical information, because they are not medical professionals and his medical information should not be public information.

The plaintiff was transferred to Turney Center Industrial Complex in Only, Tennessee. There, the plaintiff was finally able to see a physician, Dr. Campbell, who confirmed that the plaintiff had a herniated disk and began treating him for that condition.

The plaintiff asserts that all the defendants named in this action violated his Eighth and Fourteenth Amendment rights by failing to provide constitutionally adequate medical care and by being negligent of his serious medical needs. He asserts that he remains in extreme pain as he awaits surgery. He claims that all the individually named defendants "knew that plaintiff had slipped and [fallen] and failed to render any assistance whatsoever. . . . Respondents' acts or omissions constitute the state law tort of negligence." (ECF No. 1-2, at 10.) He asserts that CCA "failed to create, implement, or execute, policies or procedures that would require their subordinates to place wet floor signs or cones on the floor . . . that would alert people to the fact that the floor was wet and/or slippery. This failure on the part of CCA caused or contributed to the hazardous conditions that caused plaintiff to slip and fall and injur[e] his back." (ECF No. 1-2, at 10.)

IV.     **Discussion**

      **A.     Standards for Establishing a Claim Under § 1983**

The removing defendants, CCA, Adams, and Lindamood, removed this action on the basis that the plaintiff asserted violations of his constitutional rights as well as violations of state law. The question

for this court is whether the plaintiff states a colorable claim under 42 U.S.C. § 1983 based on the alleged violation of his constitutional rights.

Section 1983 confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 44 n.3 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir. 1996). Thus, to state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F. 3d 584, 590 (6th Cir. 2003) (citations omitted); 42 U.S.C. § 1983.

The plaintiff's claims of constitutional violations are based on the alleged failure by prison officials and medical personnel to provide adequate medical care. The Eighth Amendment, by its terms, prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. In its application by the courts, the Eighth Amendment has been specifically construed to prohibit the "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion), and conduct repugnant to "evolving standards of decency," *Trop v. Dulles*, 356 U.S. 86, 101 (1958) (plurality opinion). While the Constitution "does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), it does require humane ones, and it is clear that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The amendment imposes affirmative duties on prison officials to "assume some responsibility for [each prisoner's] safety and general well-being," and to "provide for his basic human needs," including medical care. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989). "Contemporary standards of decency require no less." *Helling*, 509 U.S. at 32 (citing *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976)).

In *Estelle*, the Supreme Court concluded that, although accidental or inadvertent failure to provide adequate medical care to a prisoner would not violate the Eighth Amendment, "deliberate indifference to the serious medical needs of prisoners" violates the Eighth Amendment, because it constitutes the "unnecessary and wanton infliction of pain" contrary to contemporary standards of decency. *Id.* at 104. Under this analysis, what constitutes "unnecessary and wanton infliction of pain" will vary depending on

the nature of the alleged constitutional violation, but the Supreme Court has clarified that the question of whether a prisoner's claim based on prison officials' failure to provide adequate medical care involves both a subjective and an objective component: The objective prong asks whether the harm inflicted by the conduct is sufficiently "serious" to warrant Eighth Amendment protection. *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992). The Sixth Circuit has defined a "serious medical need" as "either one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 570 (6th Cir. 2013) (quotation marks and citations omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

To establish the subjective component of an Eighth Amendment *Estelle* violation, a prisoner must plead facts showing that "prison authorities have denied reasonable requests for medical treatment in the face of an obvious need for such attention where the inmate is thereby exposed to undue suffering or the threat of tangible residual injury." *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir.1976). A defendant's state of mind is sufficiently culpable to satisfy the subjective component of an Eighth Amendment claim when it amounts to a reckless disregard of a substantial risk of serious harm; behavior that is merely negligent will not suffice. *Farmer*, 511 U.S. at 835–36. Consequently, allegations of medical malpractice or negligent diagnosis and treatment fail to state an Eighth Amendment claim of cruel and unusual punishment. *See Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Thus, when a prisoner has received some medical attention but disputes the adequacy of that treatment, the federal courts are generally reluctant to second-guess the medical judgments of prison officials and thus to constitutionalize claims which sound in state tort law. *Westlake*, 537 F.2d at 860 n.5. Notwithstanding, the Sixth Circuit has also recognized that "in

some cases the medical attention rendered may be so woefully inadequate as to amount to no treatment at all." *Id.*

>    **B.    The Removing Defendants' Motion for Partial Judgment on the Pleadings**

The removing defendants argue that (1) the plaintiff's Fourteenth Amendment claim should be dismissed because the Eighth Amendment is the proper avenue for seeking redress of his alleged civil rights violations; (2) the Eighth Amendment claims against Adams and Lindamood in their individual capacity should be dismissed because the plaintiff does not allege their personal involvement in his medical treatment; (3) the claims against Adams and Lindamood in their official capacity should be dismissed because these are the same as claims against CCA, and CCA is already a named defendant; and (4) the constitutional claims against CCA should be dismissed because the plaintiff has not alleged that CCA's policies or customs were a moving force behind the alleged constitutional deprivation. In a footnote appended to their memorandum in support of their motion, the removing defendants further posit that, if the court dismisses the § 1983 claims against them, the plaintiff's state-law claims against the defendants should be remanded to the state court, since federal question jurisdiction will no longer exist.

>    *(1)    Fourteenth Amendment Claim*

First, it is clear that the plaintiff's claims sound under the Eighth Amendment rather than the Fourteenth. The plaintiff is a convicted prisoner, not a pretrial detainee. The Sixth Circuit has expressly held, under similar circumstances, that "the plaintiff's section 1983 claim in a case such as this must be for redress of eighth amendment, not fourteenth amendment substantive due process, rights." *Walker v. Norris*, 917 F.2d 1449, 1455 (6th Cir. 1990) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)); *see also Whitley v. Albers*, 475 U.S. 312, 327 (1986) ("We think the Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners. . . . Because this case involves prison inmates rather than pretrial detainees . . . , [we hold] that in these circumstances the Due Process Clause affords respondent no greater protection than does the Cruel and Unusual Punishments Clause."). The plaintiff's Fourteenth Amendment claim is subject to dismissal, as his claims are redressable under the Eighth Amendment.

### (2)    Claims Against Lindamood and Adams

The court also finds that the plaintiff's allegations fail to state a claim against Adams and Lindamood in their individual capacity. As set forth above, one of the elements of a deliberate-indifference claim is that the plaintiff must show that the defendant prison officials were aware of facts from which an inference could be drawn that there was a substantial risk of serious harm, and that the prison officials in fact drew such an inference. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). In addition, proof of personal involvement in the acts giving rise to the plaintiff's claims is required in order to establish the personal liability of a supervisory defendant under § 1983. *Miller v. Calhoun*, 408 F.3d 803, 817 n.3 (6th Cir. 2005). There is no *respondeat superior* liability under § 1983, *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 122 (1992), which means that supervisory liability cannot be based simply on the right to control employees. *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006). As the Sixth Circuit has stated:

> The law is clear that liability of supervisory personnel must be based on more than merely the right to control employees. Further, a claim of failure to supervise or properly train under section 1983 cannot be based on simple negligence. [A] failure of a supervisory official to supervise, control, or train the offending individual [employees] is not actionable absent a showing that the official either encouraged or in some way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending [employees].

*Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989) (citations and quotation marks omitted; alterations in original). The denial of grievances or even a failure to remedy alleged retaliatory behavior does not serve as the basis of a constitutional violation under 42 U.S.C. § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *see also Lee v. Mich. Parole Bd.*, 104 Fed. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance." (citing *Shehee*, 199 F.3d at 300)).

Here, the plaintiff has not alleged that either Lindamood or Adams was personally involved in his medical care. (ECF No. 1-2, Complaint at 3-8, ¶¶ 12–24.) He mentions both Lindamood and Adams in paragraph 18 of his complaint, alleging that they "knew about [the plaintiff's] condition by seeing with their own eyes on a weekly bas[i]s plaintiff's condition." (Complaint ¶ 18.) The plaintiff also alleges that he

discussed his condition with Warden Adams, and Warden Adams informed him that medical decisions "were not up to him." (Complaint ¶ 20.) Tellingly, the plaintiff does not allege that either Lindamood or Adams was involved in his medical treatment, although he does specifically state that many of the unserved defendants participated in his medical care. Because the plaintiff does not allege that Warden Lindamood or Warden Adams was actively involved in any aspect of his medical care, his complaint, construed liberally, fails to state an Eighth Amendment deliberate-indifference claim against them in their individual capacities.

Further, to the extent the plaintiff intends to state a claim against Lindamood or Adams in their official capacity, such a claim is equivalent to a claim against the entity that employs them, in this case CCA. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent"). Because CCA is already a named defendant, any official-capacity claim against Adams and Lindamood is redundant and therefore unnecessary. The court will dismiss the official-capacity claims against Adams and Lindamood on that basis.

### *(3)      Claim Against CCA*

A private corporation that performs the traditional state function of operating a prison acts under the color of state law for purposes of § 1983. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). In addition, the standards for assessing municipal liability under § 1983 also apply to claims against private corporations that operate prisons. *See, e.g.*, *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005) ("Like a municipality, a government contractor cannot be held liable on a *respondeat superior* theory. . . . [H]owever, a private contractor is liable for a policy or custom of that private contractor. . . ."). *Thomas v. Coble*, 55 F. App'x 748, 748–49 (6th Cir. 2003) (applying *Monell* standards to claims against CCA). In either case, the plaintiff must plead and prove an injury caused by an action taken pursuant to some official policy or custom of the entity. *Johnson*, 398 F.3d at 877 (citing *Monell*, 436 U.S. at 691, 694); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80–81 (6th Cir. 1995). Thus, to prevail in this action against CCA, the plaintiff must show, first, that he suffered harm because of a constitutional violation and second, that a policy or custom of the entity—in this case, CCA—caused the harm. *See Collins v. Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). Simply stated, the plaintiff must "identify the policy, connect the

policy to [CCA] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't,* 8 F.3d 358, 364 (6th Cir. 1993) (citation omitted).

Here, the plaintiff's only allegations regarding a custom or policy on the part of CCA relate to CCA's failure to require employees to place "wet floor signs or cones on the floor in front of the supply closet." (Complaint ¶ 26.) The plaintiff alleges that this failure resulted in his fall and subsequent back injury. Even taken as true, these allegations do not establish that CCA's customs or policies were the moving force behind the alleged denial of medical care to the plaintiff. The court therefore finds that the plaintiff fails to state a claim against CCA under § 1983, and that this claim must be dismissed.

### (4)       *State-Law Claims*

The removing defendants request, in a footnote, that the state-law claims against them be remanded to the state court. The court may exercise supplemental jurisdiction over state-law claims against the removing defendants "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367. Because, as set forth below, the court finds that the plaintiff states potentially viable § 1983 claims against some of the remaining defendants, and the state-law claims clearly arise from the same set of events as the plaintiff's § 1983 claims, the court has supplemental jurisdiction over any state-law negligence claims.

In that regard, the plaintiff states a colorable claim for negligence against CCA itself, over which the court will retain jurisdiction under § 1367. The complaint does not allege facts that state a negligence or other state-law claim that this court can discern against the supervisory defendants in their individual capacity. Any putative state-law claims against defendants Adams and Lindamood will therefore be dismissed.

In sum, the court will grant in the removing defendants' motion for partial judgment on the pleadings and will dismiss the § 1983 claims against the removing defendants for failure to state a claim for which relief may be granted. The court further finds that the complaint fails to state any viable theory of recovery against defendants Adams and Lindamood under state law and will therefore dismiss the claims against those defendants in their entirety. The court will, however, retain jurisdiction over the state-law claims against defendant CCA.

**C.      Claims Against the Non-Removing Defendants**

With regard to the Eighth Amendment claims against the remaining, non-removing defendants, the court finds that the plaintiff clearly alleges the existence of a serious enough medical condition to satisfy the objective component of his Eighth Amendment claim. A close question, however, is posed as to whether his allegations establish the subjective component, because the plaintiff clearly received some medical care at WCFA. In light of the plaintiff's allegations that his condition continued with little improvement for more than a month and the plaintiff was never allowed to see an actual physician, the court nonetheless finds that his allegations give rise to a reasonable inference that the medical providers subjectively perceived the risk that something more serious than mere muscle spasms was going on, and that they were deliberately indifferent to such risk. The court finds, for purposes of the initial review, that the allegations of delay and dilatory treatment potentially go beyond mere negligence and suggest a denial of treatment "in the face of an obvious need for such attention where the inmate is thereby exposed to undue suffering or the threat of tangible residual injury." *Westlake*, 537 F.2d at 860. In short, the plaintiff has adequately alleged the deprivation of a right secured by the constitution by the defendant medical practitioners, including Nurse Brown, Nurse Glenda, and Doctor Jane Doe.

With respect to the other defendants, namely Medical Director Presley and Warden Ford, the allegations against these defendants are effectively identical to those against the removing defendants, Warden Adams and Warden Lindamood, and the court finds that the complaint fails to state a colorable § 1983 claim or state-law negligence claim against these defendants for the same reasons as set forth above in the discussion of the claims against the removing defendants. The fact that the various supervisory defendants might have seen that the plaintiff was having difficulty walking around does not support an inference that these individuals were aware of the cause of the plaintiff's injury or that they had an obligation either to find out what was wrong with him or to ascertain whether he was obtaining adequate medical care for his condition. The claims against these defendants will therefore be dismissed in their entirety.

**V.      CONCLUSION**

For the reasons set forth herein, the removing defendants' motion for partial judgment on the pleadings will be granted insofar as the § 1983 claims against these defendants will be dismissed. In

addition, the state-law claims against defendants Adams and Lindamood will be dismissed, but the court will retain supplemental jurisdiction over the state-law negligence claim asserted against CCA.

On initial review of the claims against the non-removing defendants, the court finds that the complaint states colorable claims under § 1983 against defendants Nurse Brown, Nurse Glenda, and Physician Doctor Jane Doe, but fails to state a colorable claim, under § 1983 or otherwise, against Medical Director Presley or Warden Ford. The claims against those defendants will be dismissed.

An appropriate order is filed herewith.

Aleta A. Trauger
United States District Judge